# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA : <br> for the Use and Benefit of THE VINING : <br> CORPORATION : <br> : <br> **Plaintiff,** : <br> : <br> v. : <br> : <br> CAROTHERS CONSTRUCTION, INC. : <br> and SAFECO INSURANCE COMPANY : <br> OF AMERICA : <br> : <br> **Defendants.** : <br> _____ : | 5:09-CV-438 (CAR) |

### *ORDER ON DEFENDANTS' MOTION TO STAY AND COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS*

Plaintiff the United States of America for the Use and Benefit of the Vining Corporation ("the Subcontractor") filed this action against Defendants Carothers Construction, Inc. ("the Contractor") and Safeco Insurance Company of America ("the Surety") to recover the amount unpaid for work performed on a construction project. This Court has federal question jurisdiction pursuant to the Miller Act, 40 U.S.C. § 3131 et seq., which gives a subcontractor the right to sue a surety on a contractor's payment bond in federal district court. Currently pending before the Court is Defendants' Motion to Stay and Compel Arbitration, or in the Alternative, Motion to Dismiss [Doc. 9]. Plaintiff has responded to the Motion [Doc.13], and Defendants filed a Reply [Doc.14]. Defendants move to stay this suit pursuant to an arbitration clause in the subcontract between the Contractor and the Subcontractor. For the reasons stated below, the Court will compel arbitration of all the claims against the Contractor and stay the remaining Miller Act claim against the Surety

pending arbitration. Thus, Defendants' Motion [Doc. 9] is **GRANTED in part and DENIED in part**.

## BACKGROUND

In 2007, the Contractor entered into a contract with the Government to perform work for a construction project known as Repair Hangar Floors and Weight and Balance Pads in Docks 1, 2, 3, and 4, of Building 83, located at the Warner Robins Air Force Base in Warner Robins, Georgia ("the Project"). As required by the Miller Act, the Contractor furnished a payment bond, issued by the Surety, guaranteeing payment to all persons supplying labor and materials. See 40 U.S.C. § 3131(b).

A couple of months later, the Contractor and the Subcontractor entered into a written subcontract ("the Subcontract"), wherein the Contractor agreed to pay the Subcontractor $53,490.00 in exchange for vapor barrier and joint sealant work for the Project. (Doc. 1, Ex. B). The Subcontract included an arbitration clause, set forth in Section 19:

> Except as otherwise specifically provided therein, *all claims, disputes, and other matters in controversy between the Contractor and Subcontractor arising out of or relating to this Subcontract shall be decided by binding arbitration* in accordance the current and applicable Construction Industry Rules of the American Arbitration Association, unless the parties both agree to different rules and procedures.

(Id.) (emphasis added).

While performing the work under the Subcontract, the Subcontractor alleges that it "was also required by [the Contractor] to perform excessive work beyond what was called for in the Subcontract." (Compl. ¶ 14). The Subcontractor contends that the additional work performed resulted from the Contractor's "failure to provide [the Subcontractor] with site conditions in accordance with the Project documents. . . . Specifically, [the Contractor] did not provide soft cut floor joints as specified in the Project documents for the Contract." (Id. ¶ 15). The Subcontractor

2

alleges that it completed all the work under the Subcontract plus the additional work, demanded payment from the Contractor, and to date has not received full payment.

Therefore, the Subcontractor filed the instant suit against both the Contractor, to recover the unpaid amounts, and the Surety, to recover on the payment bond. In the Complaint, the Subcontractor contends that the Contractor first, breached the Subcontract by not paying the remaining balance for the work performed, and second, did not pay for the additional work performed. (Compl. ¶¶ 13, 14, 20). Alternatively, the Subcontractor seeks to recover for the additional work under a theory of quantum meruit. (Id. ¶ 22). Defendants filed the current Motion to Stay Proceedings and Compel Arbitration, or in the Alternative, Motion to Dismiss.

## DISCUSSION

### A. Only the Claims Against the Contractor are Subject Arbitration

Defendants move to compel arbitration of all of the Subcontractor's claims pursuant to the arbitration clause in the Subcontract. The Court finds that only the Subcontractor's claims against the Contractor, and not the Surety, are subject to arbitration. Therefore, the Court grants Defendants' Motion regarding all of the Subcontractor's claims against the Contractor and denies the Motion regarding the Subcontractor's Miller Act claim against the Surety.

The Federal Arbitration Act ("FAA") governs written contracts involving interstate commerce and provides that arbitration clauses in such contracts are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. In this case, the Subcontractor does not challenge the validity of the arbitration agreement in the Subcontract but instead disputes the scope of the agreement. Therefore, the Court need not decide whether the agreement is enforceable; rather, the Court must determine whether the Subcontractor's claims fall within the scope of the arbitration clause.

*1. Breach of Contract Claim Comes Within the Scope of the Arbitration Clause*

Federal policy requires courts to construe arbitration clauses broadly, "resolving all doubts in favor of arbitration." Seaboard Coast Line R. Co. v. Trailer Train Co., 690 F.2d 1343, 1348 (11th Cir. 1982). Therefore, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91 (2000). In this case, the Subcontractor is resisting arbitration and thus has the burden of proving that all of its claims do not come within the scope of the arbitration agreement.

Here, the Subcontractor's breach of contract claim against the Contractor is clearly arbitrable. In the Complaint, the Subcontractor alleges that the "failure of [the Contractor] to make the payment to Plaintiff constitutes a breach of the Subcontract." (Compl. ¶ 20). This allegation deals expressly with the parties' duties under the Subcontract: Despite the Subcontractor's full performance under the Subcontract, the Contractor has failed to pay in full as required by the Subcontract. See Olsher Metals Corp. v. Olsher, No. 01-3212-CIV, 2003 WL 25600635, at *6 (S.D. Fla. Mar. 26, 2008) (finding that breach of contract claim bore a direct nexus to contract containing arbitration provision). Therefore, the Subcontractor's breach of contract claim against the Contractor undoubtedly arises out of the Subcontract and comes within the scope of the arbitration clause.

*2. Additional Work Claim Comes Within the Scope of the Arbitration Clause*

The Court finds that the Subcontractor's additional work claim against the Contractor also comes within the scope of the Subcontract's arbitration clause. The Eleventh Circuit uses a foreseeability standard to determine whether a claim other than breach of contract falls within the scope of an arbitration agreement. In Telecom Italia, SpA v. Wholesale Telecom Corp., the Eleventh Circuit held that a claim is subject to an arbitration clause if it is an "immediate, foreseeable result of the performance of contractual duties." 248 F.3d 1109, 1116 (11th Cir. 2001). "Disputes that are not related-with at least some directness-to performance of duties specified by the contract do not

4

count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause." Id. "However, where the dispute occurs as a fairly direct result of the performance of contractual duties . . . , then the dispute can fairly be said to arise out of or relate to the contract in question, and arbitration is required." Id.

Here, the additional work claim is subject to arbitration because the claim was a foreseeable result of the Subcontractor's contractual duty to perform joint sealant work under the Subcontract. In the Complaint, the Subcontractor contends that it was required to perform additional work because the Contractor failed to provide soft cut floor joints, as specified in the Project documents. (Compl. ¶ 15). The additional work claim is a dispute relating to the Subcontract because having the proper floor joints clearly relates to the Subcontractor's duty to perform joint sealant work under the Subcontract.

Moreover, the arbitration clause in this case is very broad covering "all claims, disputes, and other matters in controversy between the Contractor and Subcontractor arising out of or relating to this Subcontract." (Doc. 1, Ex. B). The Subcontractor, as the party resisting arbitration, has the burden of showing that the additional work claim does not come within the scope of this broad arbitration agreement. However, the Subcontractor has failed to put forth any factual or legal arguments to meet this burden.

Furthermore, even if there is any doubt whether the additional work claim falls within the scope of the arbitration clause, federal policy requires the Court to resolve all doubts in favor of arbitration. See Green Tree Financial Corp., 539 U.S. at 452 ("[I]f there is doubt about . . . the 'scope of arbitrable issues'-we should resolve that doubt 'in favor of arbitration.'") (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)). Thus, the additional work claim against the Contractor falls within the scope of the arbitration clause in the

5

Subcontract.

        *3.      Quantum Meruit Claim Comes Within the Scope of the Arbitration Clause*

In the alternative, the Subcontractor seeks to recover for the additional work under quantum meruit. However, even if the Subcontractor characterizes the additional work as an equitable claim, the Subcontract's arbitration clause is broad enough to encompass such a claim. See Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840 (2d Cir. 1987) (construing a broad arbitration clause to encompass equitable claims, such as unjust enrichment). "Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted." Seaboard Coast Line R. Co., 690 F.2d at 1348. Here, the Subcontractor's quantum meruit claim is predicated on the exact same facts as the additional work claim discussed above. Because the Court has already addressed the additional work claim, the Court similarly finds that the Subcontractor's quantum meruit claim relates to the Subcontract and is therefore subject to arbitration. The Subcontractor does not meet the burden of showing that arbitration is unsuitable for the claims against the Contractor, and thus, all of the Subcontractor's claims against the Contractor are subject to binding arbitration.

        *4.      Miller Act Claim Does Not Come Within the Scope of the Arbitration Clause*

The remaining issue is whether the Subcontractor's Miller Act claim against the Surety comes within the scope of the Subcontract's arbitration clause. The Court finds that the Subcontractor's claim against the Surety is not subject to arbitration because the Surety was not a party to the Subcontract, nor was the payment bond incorporated by reference in the Subcontract. See Employers Ins. of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir. 2001) ("no party can be compelled to arbitrate unless that party has entered into an agreement to do so."); U.S. Fidelity & Guar. v. West Point Constr. Co., 837 F.2d 1507, 1508 (11th Cir. 1988)

(holding that when a performance bond incorporates a contract that requires arbitration, the surety is obligated to arbitrate); Portland Constr. Co. v. Weiss Pollution Control Corp., 532 F.2d 1009, 1012 (5th Cir. 1976) (holding surety not subject to arbitration where it was not a party to the subcontract between contractor and subcontractor). Accordingly, Defendants' Motion to Compel Arbitration is **GRANTED** for all of the claims against the Contractor and **DENIED** for the Miller Act claim against the Surety.

**B.     Miller Act Claim Against the Surety Should be Stayed Pending Arbitration**

After determining that the Subcontractor's Miller Act claim against the Surety is not subject to arbitration, the Court finds it appropriate to stay the claim pending arbitration between the Contractor and the Subcontractor. When issues are not referable to arbitration, a court, while not required to stay the action, has discretionary power to do so. Clinton v. Jones, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); see also Advanced Bodycare Solutions, LLC v. Thione Intern., Inc., 524 F.3d 1235, 1241 (11th Cir. 2008) ("[D]istrict courts have inherent, discretionary authority to issue stays in many circumstances, and granting a stay to permit mediation (or to require it) will often be appropriate." (footnote omitted)).

Several of our sister circuits have held that a subcontractor's claim against a surety on a payment bond should be stayed pending arbitration between the contractor and the subcontractor. For example, in Agostini Brothers Building Corp. v. United States, the Fourth Circuit held that when a contractor requests a stay of a Miller Act claim by a subcontractor against both the contractor and the surety, "[t]here can be no question that, under [9 U.S.C. § 3], defendants [a]re entitled to the stay asked." 142 F.2d 854, 855 (4th Cir. 1944). Likewise, the Fifth Circuit held that where a subcontractor arbitrates with a contractor and litigates separately against the surety pursuant to the

Miller Act, "the Federal Arbitration Act specifically provides for a stay." United States ex rel. Portland Constr. Co. v. Weiss Pollution Control Co., 532 F.2d 1009, 1013 (5th Cir. 1976); see also U. S. for Use & Benefit of Capolino Sons, Inc. v. Elec. & Missile Facilities, Inc., 364 F.2d 705 (2d Cir. 1966) (staying Miller Act claim pending arbitration between contractor and subcontractor).

The facts in this case are similar to the above cases, and as in the other circuits, the Court finds that the Miller Act claim should be stayed pending arbitration. Moreover, a stay in this case would help promote judicial economy and efficiency by preventing needless litigation and waste of judicial resources. Because the underlying dispute relates to the same factual allegations set out in the Subcontractor's Complaint, if the parties were to arbitrate and litigate at the same time, not only would the possibility of inconsistent outcomes exist, but also the parties may incur unnecessary expenses. Furthermore, staying the Subcontractor's claim against the Surety would not permit a decision in either proceeding to have a preclusive effect in the other. Therefore, Defendants' Motion to Stay is **GRANTED** regarding the Miller Act claim against the Surety.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Stay and Compel Arbitration [Doc. 29] is **GRANTED in part and DENIED in part**, and all of the Subcontractor's claims against the Contractor are **DISMISSED**. Therefore, the Court **STAYS** the suit against the Surety and **ORDERS** the Contractor and the Subcontractor to proceed to arbitration in accordance with the Subcontract within **forty-five (45) days** of the date of this Order. If the parties are unable to arrange arbitration within this time period, the parties are **DIRECTED** to contact the Court and explain the reasons why they are unable to arbitrate this matter within the time period and advise the Court of the date arbitration will occur.

**SO ORDERED**, this 12th day of May, 2010.

              <u>S/ C. Ashley Royal</u>
              C. ASHLEY ROYAL, JUDGE
              UNITED STATES DISTRICT COURT

APG/ssh